**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180307-U

Order filed April 22, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0307 Circuit No. 97-CF-5 |
| STEVE THOMPSON, | ) ) ) | Honorable Jeffrey W. O'Connor, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Presiding Justice McDade and Justice O'Brien concurred in the judgment.

**ORDER**

¶ 1    *Held*: The denial of defendant's motion for forensic testing is not a final and appealable order in light of defendant's still pending postconviction petition.

¶ 2    Defendant, Steve Thompson, appeals from an order denying his motion for scientific testing pursuant to section 116-3 of the Code of the Criminal Procedure of 1963 (Code) (725 ILCS 5/116-3 (West 2014)). In light of defendant's pending postconviction petition, we dismiss the appeal for lack of jurisdiction.

¶ 3                                    I. BACKGROUND

¶ 4          On July 10, 1997, after a three-day trial, a jury found defendant guilty of first degree murder and aggravated battery for striking 16-month-old Chardae Williams about the head and body and/or violently shaking her, causing her death, and committing those acts and knowingly causing her great bodily harm when he was older than 18 and she was younger than 13.

¶ 5          The evidence at trial that is relevant to this appeal is the introduction of bite mark evidence found on the child's body and expert opinion regarding shaken baby syndrome. The State presented Dr. Larry Blum, who performed the autopsy on Chardae. He noted that he observed a bite mark on Chardae's chest. He opined that the bite mark could not have been accidental. In addition, he believed the bite occurred more than 24 hours before Chardae's death. Blum opined that Chardae died of head trauma due to blunt force injury. He could not rule out shaking causing hemorrhaging and swelling of the brain.

¶ 6          Dr. Nicholas Powers, a dentist and forensic odontologist, testified as an expert. He observed a bite mark on Chardae's chest. He compared it to teeth impressions taken from defendant. In his opinion, defendant made the bite, and the force required to make the bite would not have been accidental.

¶ 7          Randall Alexander, an associate professor of pediatrics, testified that Chardae died from brain injuries as a result of shaken baby syndrome and impact force, causing injuries to the head. As to the bite mark, he opined that such an injury would have been suffered within several days of her death, and it could not have been accidental.

¶ 8          Defendant testified that he accidentally bit Chardae several days before her death. He did not believe that he bit her very hard.

¶ 9    After being found guilty, the trial court sentenced defendant to a term of natural life imprisonment for first degree murder. He appealed; this court vacated defendant's unsentenced conviction for aggravated battery of a child under one-act, one-crime grounds. This court affirmed defendant's conviction and sentence for first degree murder. See *People v. Thompson*, No. 3-98-0199 (Jan. 1, 1999) (unpublished order under Illinois Supreme Court Rule 23). Next, defendant filed a postconviction petition. The trial court granted defendant a new sentencing hearing but denied his remaining postconviction claims. He appealed; this court affirmed defendant's new 52-year sentence. This court affirmed the dismissal of defendant's remaining postconviction claims but noted that it would not reach defendant's claim of actual innocence as it related to forensic bite mark testing and shaken baby syndrome. See *People v. Thompson*, 2014 IL App (3d) 120895-U, ¶ 18.

¶ 10    On June 18, 2015, defendant filed a new postconviction petition. He alleged that his trial counsel suborned perjury by advising him to testify that he bit the victim. Defendant also alleged that counsel provided ineffective assistance by failing to investigate and retain a forensic odontologist to dispute the testimony of the State's odontologist that defendant made the bite mark.

¶ 11    On the same day, defendant filed a separate motion for independent testing and the appointment of a forensic pathologist and forensic odontologist pursuant to section 116-3 of the Code (725 ILCS 5/116-3 (West 2014)). According to the motion, a forensic odontologist could testify that (1) defendant did not bite the victim or (2) bite mark analysis is not a valid science. Defendant also contended that recent medical opinions challenged the validity of shaken baby syndrome as a diagnosis. Defendant contended that this evidence demonstrated his innocence. In addition to relying on section 116-3, the motion also relied on postconviction case law that stood

for the proposition that the circuit court has general discovery powers in postconviction proceedings to appoint experts to assist defendant in proving his claims.

¶ 12     The trial court appointed counsel to represent defendant on his postconviction petition and his section 116-3 motion.

¶ 13     At a hearing on defendant's section 116-3 motion, his appointed counsel announced that he would adopt and argue the motion without amending the motion. The State responded that section 116-3 did not permit the type of independent testing defendant sought. Rather, section 116-3 only allows for deoxyribonucleic acid (DNA), fingerprint, and ballistic testing. The State also argued that the bite mark evidence was not materially relevant to defendant's claim of actual innocence because the bite mark occurred several days before the child's death.

¶ 14     Ultimately, the trial court denied defendant's section 116-3 motion. The court agreed with the State that section 116-3 did not permit the type of testing defendant requested. The court also agreed that the bite mark evidence was not materially relevant to defendant's claim of actual evidence. As to defendant's shaken baby syndrome claim, the court noted that three experts testified that the child's injuries were caused by being shaken. The court found that defendant failed to identify any new method for determining whether a child was the victim of shaken baby syndrome.

¶ 15     Subsequently, appointed counsel moved to withdraw as counsel for defendant's postconviction petition. Appointed counsel noted that defendant's postconviction claims lacked merit where the denial of defendant's motion for forensic testing prevented defendant from supporting his petition with evidence. The record on appeal does not show that the trial court ever ruled on counsel's motion to withdraw.

¶ 16       On May 18, 2018, defendant filed his notice of appeal. The notice of appeal identified the denial of his motion for independent testing as the order he was appealing.

¶ 17                                                          II. ANALYSIS

¶ 18       At the outset, we must address our jurisdiction. An appellate court has a duty to consider its jurisdiction and to dismiss an appeal if jurisdiction is lacking. *People v. Dominguez*, 366 Ill. App. 3d 468, 472 (2006). Although distinguishable from the facts of this case, we find our supreme court's decision in *People v. Savory*, 197 Ill. 2d 203 (2001), instructive on the issue of jurisdiction.

¶ 19       In *Savory*, defendant filed a standalone motion for forensic testing under section 116-3. *Id.* at 208. The circuit court denied the motion. *Id.* at 209. On appeal, the State argued that the supreme court lacked jurisdiction over the appeal. *Id.* at 210. The supreme court rejected the State's argument. *Id.* In so holding, the supreme court found that the denial of a standalone motion under section 116-3 was a final judgment for purposes of jurisdiction. *Id.* at 210-11. The court continued:

> "Supreme Court Rule 2(b)(2) states that the term " '[j]udgment' also
> includes decree, determination, decision, order, or portion thereof."
> 134 Ill.2d R. 2(b)(2). An order of the circuit court denying a
> defendant's motion for testing pursuant to section 116-3 of the Code
> of Criminal Procedure disposes of the defendant's request for relief
> under that provision. The motion seeks to initiate a separate
> proceeding, independent of any claim for post-conviction or other
> relief. Thus, denial of a motion requesting relief under section 116-
> 3 is a judgment—or decree, determination, decision, or order, as our
> Rule 2(b)(2) provides—that finally disposes of the defendant's

claim. Accordingly, the denial of defendant's motion by the circuit court in the present case was a final judgment, and the appellate court possessed jurisdiction over the defendant's appeal from the adverse ruling." *Id.*

¶ 20 Unlike *Savory*, defendant in this case did not file a standalone motion for forensic testing under section 116-3. In other words, he did not seek to initiate a separate proceeding independent of any claim for postconviction relief. Instead, he filed the section 116-3 motion contemporaneously with his postconviction petition. The postconviction petition, in turn, relied upon the evidence defendant sought to obtain with his section 116-3 motion. However, the denial of defendant's section 116-3 motion did not finally dispose of his postconviction claims. Appointed counsel moved to withdraw as counsel for defendant's postconviction petition, citing the denial of the section 116-3 motion as preventing defendant from supporting his claims with evidence. The record in this case does not show that the trial court ever decided counsel's motion to withdraw. Thus, the postconviction petition remained pending at the time defendant filed his notice of appeal from the order denying his section 116-3 motion. On appeal, defendant concedes that section 116-3 does not provide a basis for him to obtain the forensic testing he sought, but he contends that his motion also asked the trial court to invoke its common law authority to allow discovery in postconviction proceedings. This argument can be advanced in the postconviction petition proceedings, not on appeal from the denial of his section 116-3 motion. A favorable ruling on defendant's postconviction petition would render this appeal moot. Accordingly, the order denying defendant's section 116-3 motion is not final, and we lack jurisdiction over the instant appeal.

¶ 21 III. CONCLUSION

¶ 22    For the foregoing reasons, the appeal is dismissed for lack of jurisdiction.

¶ 23    Appeal dismissed.